Mrs. Rachel Williams, in her own behalf, and as natural tutrix of her minor daughter, Donna Mae Williams, brought suit against Ralph R. Miller Shows to recover $10,000 as damages for injuries suffered by her minor daughter as the result of the breaking of an alleged defective "whirling swing" operated by the said Ralph R. Miller Shows in connection with a street fair conducted by the defendant in Hammond, Louisiana. *Page 250 
The petition alleges that the said Donna Mae Williams, on the night of April 26, 1941, while in attendance at the street fair, paid the regular admission to ride the "whirling swing" and while so riding, the swing broke, thus throwing her "up into the air and upon the ground, causing her serious and grievous injury". The petition further alleges that the said accident was caused by the gross negligence and carelessness of the employee or employees of the said defendant.
Upon the allegation that plaintiff had "good reason to believe that the Ralph R. Miller Shows is about leaving permanently the State of Louisiana without there being a possibility in the ordinary sense of judicial proceedings of obtaining or executing judgment against it previous to its departure", and that a writ of attachment was necessary to protect plaintiff's interest, and after furnishing a bond, a writ of attachment issued by virtue of which the sheriff seized all the movables, equipment and paraphernalia used in conducting the street fair.
The original petition was filed on May 3, 1941. In this petition the plaintiff does not designate the status of "Ralph R. Miller Shows", nor the domicile of such defendant. On May 7, 1941, plaintiff filed a supplemental petition, in which she alleges that the defendant Ralph R. Miller Shows was a commercial partnership composed of Ralph R. Miller, C.L. Spencer, Mrs. C.L. Spencer, Ken Dantzler, and Clifford R. Knox, whose residences are not known to plaintiff, "and the said commercial partnership, together with all of its partners, are jointly, severally and in solido indebted to petitioner" for the sum of $10,000 as originally prayed for. Upon the proper allegation, she asked that a writ of attachment issue on the same bond as was furnished for the first writ of attachment, and which was accordingly done. In the prayer of her petition she prays that the commercial partnership firm of Ralph R. Miller Shows and each of the partners be cited to appear and answer the suit, and that judgment be rendered as prayed for in the original petition and that the writ of attachment be maintained.
On May 9, 1941, defendants obtained a rule upon the plaintiff, requiring her to show cause on May 14, 1941, why the writ of attachment issued should not be dissolved and the property attached should not be released because of insufficiency of the bond as to solvency, and because of the pecuniary insufficiency of the surety thereon. On trial, the rule was made absolute, and a judgment was signed by the trial judge dissolving the writ of attachment at plaintiff's cost. Thereafter, on the same day, plaintiff filed another supplemental and amended petition in which, after alleging that the injuries to her minor daughter were not as severe as she at first thought them to be, and reducing her claim to $1,000, and averring that the property attached is a type of property readily movable, she prayed for and obtained a writ of judicial sequestration. On May 16, 1941, defendants obtained a rule returnable on May 23, 1941, to show cause why this writ of judicial sequestration should not be vacated, the writ dissolved and the properties released from seizure. On May 26, 1941, this writ of judicial sequestration was dissolved, with permission being granted plaintiff to file a supplemental petition with bond.
Thereafter, on May 26, 1941, in accordance with the ruling of the trial judge, the plaintiff filed a supplemental and amended petition in which she reduced her claim for damages to $1,000 and prayed for judgment against defendants, in solido, for that amount. She also prayed for and obtained a writ of attachment upon a bond of $1,000 signed by McKinley Demars. On May 31, 1941, defendants obtained a rule directed to plaintiff to show cause on June 6, 1941, why this writ of attachment should not be dissolved on account of insufficiency of bond and the pecuniary insufficiency of the surety thereon. By consent the hearing on the rule was continued until June 13, 1941.
Prior to the trial of this rule, plaintiff filed with the Clerk of the Court a new attachment bond in the sum of $1,000, which bond was signed by T.W. Dunnington as surety. During the trial of the rule plaintiff offered this bond in lieu of the Demars bond, to which offering the defendants objected.
The objection was sustained. The trial judge made the rule absolute and dissolved the writ of attachment. Plaintiff obtained a writ of certiorari from the Supreme Court. The Supreme Court, after hearing, made its rule absolute, annulled the judgment of the District Court dissolving the writ of attachment. It further ordered the filing of the new or supplemental bond by T.W. Dunnington, with reservation to defendants to question the validity of the *Page 251 
bond as to form and substance and as to the pecuniary sufficiency of the surety thereon. See 198 La. 870, 5 So.2d p. 135. The defendants have not questioned the sufficiency of this bond.
On May 2, 1942, defendants filed their answer. For answer they denied all of the allegations of plaintiff's original petition and as amended by the supplemental petition of May 7, 1941, admitting only that Donna Mae Williams attended a street fair in the City of Hammond on or about April 16, 1941; they specifically deny that there is any concern by the name of Ralph R. Miller Shows. They allege that they are all residents of the State of Louisiana; that there does not exist any partnership between themselves. In further answer they set out that if the said Donna Mae Williams was injured and received personal injuries, then that such injury and damage were not the result of any act of omission or commission on the part of any of respondents or of any employee of respondents. In the alternative, they plead contributory negligence on the part of Miss Williams. They specifically allege that they are not members of a partnership, and are particularly not partners under the commercial partnership of Ralph R. Miller Shows, or any other name; that they have no joint ownership of any property whatever, and that each individual is the owner of certain property which was unlawfully seized and attached herein.
Defendant Ralph R. Miller averred that he did not own any of the rides, vehicles, concessions, property or equipment which formed the street fair, having acted as the booking agent for the assembly of the different units which made up the entire street fair in question.
Defendants Knox, Clarence L. Spencer and Dantzler reconvened for damages due to the illegal, wrongful and unlawful attachment of their property and for attorney's fees.
By supplemental answer filed on May 8, 1942, the defendants further reconvened for attorney's fees in the sum of $1,000 incurred in the dissolution of the writs of attachment issued on May 3, 1941, and May 7, 1941, in the dissolution of the writ of judicial sequestration and the intended dissolution of the writ of attachment ordered by the Supreme Court.
On May 13, 1942, plaintiff filed another supplemental and amended petition in which she alleged that she was duly appointed and legally confirmed as the natural tutrix of her minor child on May 13, 1942, and that she was prosecuting the action in her official capacity as such.
On May 19, 1942, defendants filed a motion to dissolve the last writ of attachment in which they set forth that plaintiff's allegation that they were about to leave permanently the State of Louisiana, without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing a judgment against them previous to their departure, was false and untrue. They further averred that they had employed counsel to file said motion for the sum of $250 as attorney's fees. A rule nisi issued directed to the plaintiff to show cause on May 29, 1942, why the writ of attachment should not be dissolved, with $250 attorney's fees for the dissolution of the writ, with reservation to defendants of their rights to seek recovery of damages for the illegal issuance of the writ and the unlawful attachment of their property. By agreement the rule was set for hearing for June 24, 1942, at which time it was duly heard and submitted.
The case on the merits was set for May 29, 1942, and partially tried and resumed on June 24, 1942, and the case submitted.
On June 26, 1942, the trial court rendered and signed a judgment recalling and dissolving the rule nisi to dissolve the attachment.
Thereafter, on the same day, the trial court rendered and signed a judgment on the merits wherein he granted plaintiff a judgment against "Ralph R. Miller Shows, a commercial partnership composed of Ralph R. Miller, C.L. Spencer, Mrs. C.L. Spencer, Ken Dantzler, and Clifford Knox, all of its partners, jointly, severally and in solido", in the sum of $1,000.
Defendants have appealed from both judgments. In this Court, defendants have filed an exception of no cause or right of action, bottomed on the proposition that the evidence does not show that Ralph R. Miller Shows is a partnership, and that therefore defendants are not liable as partners thereof. The exception goes to the merits of the controversy and it will be so treated.
As stated before, the judge of the lower court recalled the rule nisi to dissolve the writ of attachment which issued on May 26, 1941, thereby refusing to dissolve the said writ. The defendants appeal *Page 252 
from the ruling of the court. The evidence is uncontradicted that all of the defendants are residents of the State of Louisiana. The evidence is uncontradicted that none of them had any intention of leaving the State permanently. In fact, plaintiff made no attempt to prove her charge that the defendants were about to leave the State permanently, essential to maintain the writ of attachment. The writ of attachment should have been recalled and dissolved, and the judgment recalling the rule nisi, thereby refusing to dissolve the writ of attachment, is erroneous. However, defendants have called our attention to the fact that the judgment on the merits is silent as to maintaining the writ of attachment and contend that such silence of the judgment is equivalent to rejection of the demand for attachment. Such is the law. It is now an axiomatic principle of our law that the legal effect of the silence of a judgment upon any part of a demand that might have been allowed under the pleadings is a rejection of that part of the demand. Therefore it now becomes useless to reverse the judgment on the rule in that the final judgment on the merits by the lower court has, in effect, destroyed or annulled the former ruling.
According to Mr. Ralph R. Miller, he contacted the board of the Veterans of Foreign Wars and American Legion for the right to operate a street fair in Hammond, and contracted with them on a percentage basis. The organization obtained the premises upon which the street fair was to be conducted. Thereafter he advertised for concessions and shows, and assembled the attractions. He was to collect a percentage and turn in part of it to the organizations. He turned the ground over to a Mr. Hottle, who was to be the manager of the street fair in its operation. Mr. Hottle was to assign the necessary space to the several equipments or concessions. He owned none of the equipment and he was not a partner with any one. His commission was 25% of the gross receipts, of which the organizations received 15% and he received 10% for booking and checking in the concessioners.
Mr. Hottle states that his occupation is show business; that he was the owner and operator of most of the main show devices, the light plant, etc; that the grounds were turned over to him, and that he assigned or allotted the space to be occupied by each concessioner; that he was to boss and manage the fair; that he turned over to Miller 25% of his gross receipts; that there was no agreement between himself and Miller, or between himself and any other concessioner requiring the bearing of any loss which he might sustain or the sharing in any of the profits he might make; that Miller would come on Sunday afternoon or night and collect his commission; that at that time he was also operating at Ponchatoula. Hottle is not a defendant.
Mr. Ken Dantzler, a defendant, states that he was operating some of the show units at Hammond, consisting of Bingo Stand and Penny Pitch Board, owning the property in his own right; that the other defendants had no interest in the property, and that he was not accountable to them for any portion of the profits, only paying Miller a certain percentage of his gross receipts. Mr. Hottle gave him his location and showed him where to put his stands. He had no arrangement with the other defendants for the sharing of any loss which he might sustain or the sharing of any gains in the operations of his concessions. He states that from this street fair he was going to Ponchatoula to operate his concession there the following week. He booked his concessions with Miller and checked in under Miller. Hottle was boss of the grounds; Miller received 25% of the gross receipt and Hottle was not paid anything; each concessioner was boss in his own concession.
Mr. C.L. Spencer, a defendant, states he operated some concessions on the grounds; that he had no agreement with anyone to share in the net profits or in the loss of the operations of these units; that he paid nothing for his location to operate; that he obtained permission to operate from Miller; Miller was to furnish the lot, license and lights and to receive 25% of the gross receipts of the units; that Mr. Hottle was in charge of the street fair as a whole, and that Hottle owned and operated the most units in number. From his testimony on the rule to dissolve the attachment, we gather that he owned and operated this "whirling swing" from which the girl fell and received her injuries. In fact, in his answer, he avers that he operated the chair plane, which was the "whirling swing".
Ralph R. Miller was recalled. He states if any license to operate was necessary, it was to be furnished by the organizations; *Page 253 
that the City of Hammond did not exact any license; that the percentage that each concessioner paid was for the privilege of operating and the use of the grounds; that the only license required was a State Occupational License, and which license was obtained by each operator at their own expense.
It was agreed that if Mr. Knox, one of the defendants, were present he would testify that he operated four units or concessions; that he paid 25% rental for the space which he occupied; that he owned his own occupational license; that he had no agreement with anybody for a division of the net proceeds or for liability for any loss in the operation of these units; that Mr. Hottle designated the location on the show lot for his concessions.
None of these witnesses was cross-examined. No testimony was offered to contradict any of the witnesses.
Under this evidence, the defendants contend that the plaintiff alleged that the Ralph R. Miller Shows was a commercial partnership and sought to hold the said partnership and the alleged members thereof responsible for the alleged accident, and since there is no showing of any partnership, she has no right or cause of action against them, either individually or in solido.
Article 2801 of the Civil Code defines "partnership" as "a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties". Civil Code, Article 2805, provides that the consent of the parties in necessary. Civil Code, Article 2813, provides that "A participation in the profits of a partnership carries with it a liability to contribute between the parties to the expenses and losses", and Civil Code, Article 2814, states that any stipulation of partnership for profit without actual participation in losses is void, both as it regards the partners and third persons.
There is no evidence to show that any of the defendants conjointly was conducting the street fair under the trade name of Ralph R. Miller Shows. The evidence is conclusive that there was no community of interest in the purchase, ownership, sale or profits of any transaction and no agreement to share liability for losses. The real intention of the parties is to be ascertained in determining the question of partnership vel non. In the case at bar, it is clear that none of the parties intended their association in the forming and operation of the street fair at Hammond to be a partnership; nor did they hold themselves out to the public as being partners. Applying the articles of the Code supra, we are of the opinion that no partnership existed. The defendants cannot be considered as partners.
The plaintiff sued the Ralph R. Miller Shows, a nonentity as far as the evidence is concerned, as a commercial partnership and sought to hold the remaining defendants liable as partners. The liability of the defendants is only if they were partners. Since the plaintiff failed to prove a partnership, it follows that they cannot be held individually liable, less in solido. A partnership is a separate entity and is distinct from the persons. The plaintiff failed to sue in the alternative one or all of the defendants as individuals, and failed to pray in the alternative that in the event of there being no partnership, then that she have judgment against such individual or individuals to whom the "whirling swing" belonged. We regret that she failed to do so, in that we feel that some, if not all, the defendants are liable for this accident and should be made to pay. We shall reserve her right of action to sue such defendant or defendants which in her opinion may be liable. We are of the opinion, therefore, that the judgment on the merits is erroneous and will be reversed and plaintiff's suit dismissed at her costs, with reservation.
The defendants seriously contend that they should be allowed attorney's fees for the dissolutions of the writs of attachment and the writ of judicial sequestration. In their motion to dissolve the first writ of attachment, the defendants did not ask for attorney's fees nor did they reserve their right so to ask. The writ was dissolved without a hearing. The defendants did reserve their rights to ask for attorney's fees in their motion to dissolve the writ of judicial sequestration. However, the judgment dissolving the writ is silent as to reservation of their rights to sue for attorney's fees. In so far as the last writ of attachment is concerned, the defendants did ask for attorney's fees and the reservation *Page 254 
of their rights and damages. The rule was recalled and defendants appealed. We are holding that the writ of attachment was dissolved not by the motion, but on the merits by the silence of the judgment in not maintaining it. It is now axiomatic that when a writ of attachment is dissolved on the merits, no attorneys' fees are due. As we view this case, the defendants are not entitled to the attorney's fees incurred by them.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed, and it is now ordered that plaintiff's suit be dismissed, with reservation to plaintiff, or to her minor daughter if emancipated, to sue such defendant or defendants which in her opinion may be liable. *Page 383