REGAN, Judge.
Plaintiff-in-rule, the House of Gems, Inc., instituted a contradictory motion against the defendants-in rule, Victory Electric Works, Inc., Thomas Ward, the Hibernia National Bank and Maryland Casualty Company, endeavoring to dissolve a writ of sequestration issued in response to the petition of the first two named defendants-in-rule, by virtue of which five items of jewelry in the possession of plaintiff-in-rule were seized by the Civil Sheriff for the Parish of Orleans. Plaintiff-in-rule insisted that the writ was improvidently issued and, therefore, it was entitled to a return of the items so sequestered, together with the recovery of damages and attorney’s fees for the wrongful issuance thereof.
Defendants-in-rule, Maryland Casualty Company and the Hibernia National Bank, pleaded the exceptions of no right or cause of action, insofar as the contradictory motion was concerned, which the trial judge properly maintained.
In order to clarify the rather complicated issues posed by this appeal, we find it expedient to briefly discuss the background of the main or principal demand from which this incidental issue emanated.
Plaintiffs therein, Victory Electric Company, Inc. and Thomas Ward, instituted suit against the defendants, Mr. and Mrs. Joseph Martin to recover $492,000, representing the amount Joseph Martin embez *184 zled from them, together with damages incurred as a result thereof.
Plaintiffs asserted that the embezzlement was accomplished when Martin successfully cashed checks at the Hibernia National Bank, which were forged,.and therefore, the bank was joined as a party defendant because of its negligence in cashing these checks, and so was its insurer, Maryland Casualty Company, since it had issued a Bankers Blanket Bond to the bank.
In order to minimize the loss resulting from the alleged embezzlement, plaintiffs obtained a writ of sequestration, directing the civil sheriff to seize various valuables which they asserted had been owned by Joseph Martin and transferred to plaintiffs, so that he could not conceal or dispose of them before plaintiffs obtained a judgment. The seized jewelry, which is the subject of the motion to dissolve the writ now before us, was then in the possession of the House of Gems, Inc., which was not a party to the original or principal demand.
The original defendants, Maryland Casualty Company and the Hibernia National Bank, did not join in the request for the issuance of the writ; therefore, when both excepted to being joined as parties defendant on the motion to dissolve the writ, they, in effect, asserted they were not liable for, nor did they sanction or participate in this seizure. Thus, to reiterate, neither was an indispensable party and the exceptions in both instances were properly maintained
The plaintiff-in-rule, House of Gems, characterized its pleading as a petition of third opposition; however, the prayer thereof discloses that it is in fact a contradictory motion, since petitioner requests the issuance of a rule to show cause against the defendants-in-rule, who filed no answer.
From a judgment dissolving the writ of sequestration, and awarding plaintiff-in-rule $750 attorney’s fees, defendants-in-rulc have prosecuted this appeal. Plaintiff-in-rule has answered the appeal, requesting us to amend the judgment so as to award the respective sums of $2000 representing damages and $2000 as attorney’s fees.
The facts pertinent to this aspect of the litigation, extracted in this proper chronological order from the record, are these:
On October 31, 1960, Joseph Martin, who was employed as a payroll clerk by Victory Electric Works, Inc., was arrested and charged with embezzlnig in excess of $300,-000 from his employer.
On that same day Joseph Martin executed a dation en paiement in favor of Victory Electric Works, Inc., wherein he acknowledged an indebtedness of more than $300,-000 to his grantee and in partial payment thereof, transferred various movable and immovable property. Included therein was a boat, a boathouse, a bank and homestead account, insurance policies and several items of jewelry.[1] All of the foregoing articles were described in detail. The dation, which is in the form of an authentic act, also contained the following provision in the list of assets to be transferred:
“All furniture, furnishings, machinery, equipment, appliances and other contents of the residence located at 613 Andrews Avenue, Metairie, La.”
On either November 1 or 2, 1960, Leon Roppolo, who is a majority stockholder in plaintiff corporation, the House of Gems, learned of Martin’s arrest and thereafter visited his wife in their residence in order to discuss a mode of settlement of the balances of three accounts, which the Martins had maintained with plaintiff-in-rule. The total thereof was in excess of $8000. Mrs. Martin then gave him five items of jewelry in partial payment of the foregoing amount, three of which had been purchased from plaintiff-in-rule. These items of jewelry were:
a.) A yellow gold mesh bracelet with 11 small diamonds in the buckle.
*185 b.) A white metal lady’s ring with star sapphire stone and 18' diamonds around it.
c.) A white metal lady’s ring with three stones.
d.) A white metal lady’s ring with large diamond with stone on each side.
e.) Three diamond studs.
The litigants’ versions of the transaction differ. While Mrs. Martin concedes that both she and her husband were indebted to the House of Gems and the jewelry was voluntarily given to Roppolo by her, she asserts that Roppolo, the proprietor of plaintiff-in-rule, neither mentioned or later credited the Martins’ account with the value thereof.
Roppolo conversely related that he informed Mrs. Martin she would be credited with the purchase price of each of the three items (namely A, B and E) which had been sold to the Martins by the House of Gems and that he would appraise the other two and give the Martins credit for the “full value” thereof. Roppolo further asserted that Mrs. Martin later informed him that her husband had expressed approval of this transaction during one of her subsequent visits with him in the Parish Prison, where he was incarcerated.
Roppolo’s statement concerning Martin’s approval of the transfer was repudiated by his wife and her testimony in this respect is fully corroborated by Captain Raymond Ruiz of the New Orleans Police Department, a disinterested witness. Ruiz said that he initially informed Martin that his wife had turned over the jewelry to Rop-polo and, as a result thereof, he became angry and dejected. He had expressed to Ruiz his hope that his wife could convert these jewels into cash in order to help support herself while he was imprisoned, which not only negates a ratification of his wife’s act, but also establishes, on the other hand, that he neither transferred this jewelry by written dation to the defendants-in-rule, nor had he any intention of doing so at the time.
In any event, defendants-in-rule obtained a writ of sequestration on November 9, 1960 by virtue of which the jewelry described hereinabove was seized from the plaintiff-in-rule. In essence, defendants-in-rule have asserted ownership of the jewelry, predicated on the hypothesis that (1) it had been purchased with money stolen from them and (2) Martin had transferred it to them by a dation en paiement, even though it was in the actual possession of the House of Gems. They also asserted that they feared the Martins would conceal or dispose of this asset while the litigation was pending and that the Martins possessed the ability to do so.
Plaintiff-in-rule filed this contradictory motion endeavoring to dissolve the writ on November 18, 1960.
On February 11, 1961, some two weeks before the rule was tried, Mrs. Martin executed an authentic act, which was designated as a dation en paiement and quit claim, wherein she ratified two dations executed by her husband on October 31, 1960, one of which transferred real estate with which we are not concerned, and the other transferred the assets hereinabove described.[2] In this act of ratification, however, the jewelry seized from the House of Gems was fully described.
Predicated upon the foregoing facts, the trial court reasoned that the writ of sequestration had been improvidently issued; therefore, plaintiff-in-rule was entitled to have the jewelry returned and to an award of $750 as attorney’s fees.
Counsel for defendants-in-rule asserts the trial judge erred in several respects, the first of which was that he disposed of this aspect of the case summarily. He ar *186 gues that a litigant may only avail himself of summary process when this mode of procedure is expressly authorized by statute, and that he reserved his right to contest the mechanics of the trial by objecting thereto in limine.
We find no merit in this contention. When the Louisiana Code of Practice was the controlling adjective law, the courts uniformly recognized with approval the right to proceed by contradictory motion in instances where mover sought to dissolve a writ of sequestration. However, it is true that the jurisprudence prior to the enactment of the Code of Civil Procedure was to the effect that a timely objection by the defendant-in-rule to summary procedure prevented the successful mover-to-dissolve from recovering damages beyond the imposition of attorney’s fees.[3] Under the present Code of Civil Procedure, both damages and attorney’s fees may be awarded to the plaintiff-in-rule who obtains a dissolution of the writ of sequestration.[4] Therefore, under the provisions of either the Code of Practice or the Code of Civil Procedure, and the jurisprudence interpretative thereof, defendants’ contention cannot be sustained.
The second procedural error complained of by defendants-in-rule is the failure of the plaintiff-in-rule to provide Martin with copies of the second and third supplemental petitions, which, they assert, invalidates the entire proceeding since Martin’s testimony was vital in resolving the issues posed for the court’s consideration.
The trial judge overruled this objection and reasoned that Martin, similar to the bank and its insurer, was not an indispensable party, since he did not join in the petition for sequestration and, therefore, could not incur liability for damages should the court decide that the writ was improvidently issued. The trial court likewise reasoned that had the defendants-in-rule wished to procure Martin’s testimony, they were afforded ample opportunity to obtain it through the medium of a deposition since the rule was tried at least three months after the last supplemental petition was filed.
Turning our attention now to a consideration of the merits of the controversy, counsel for defendants-in-rule insists that the trial court erred in rendering judgment for the plaintifif-in-rule since it failed to prove that it either owned the jewelry through a valid dation en paiement or that it possessed a vendor’s lien.
This argument is predicated on the fallacious premise that the plaintiff-in-rule must bear the burden of proving the improvident issuance of the writ before the defendant-in-rule is required to exert any effort to justify the seizure.
Since the writ issued before the Code of Civil Procedure became effective, we are relegated to Article 2S8 of the Code of Practice and the jurisprudence interpretative thereof in order to determine where the burden of proof lies. While this article ostensibly indicates that the mover endeavoring to dissolve the writ of sequestration initially must carry the burden of proving that the writ was improvidently issued, the jurisprudence interpretative thereof, surprisingly enough, is conflicting on this *187 point.[5] The rationale of a case decided some years ago appears to be that the plaintiff-in-rule bears the burden of proving his right to contest the issuance of the writ completely before the defendant-in-rule is required to prove the truth of the allegations upon which the writ was issued.[6] Conversely, the rationale of a more recent case is to the effect that the plaintiff-in-rule need merely to point to a defect in the prima facie ■case made out by the petition and verifying affidavit upon which the writ issued, and this squarely placed the burden of proving the assertions made in the petition for sequestration on the defendant-in-rule.[7] Obviously, the latter interpretation is more reasonable because it has as its objective the rendition of justice.[8]
Logically, we must now examine the petition and affidavit upon which the writ as issued was predicated in view of our foregoing conclusion with respect to who must carry the burden of proof. Defendants-in-rule asserted ownership of the jewelry by virtue of a dation en paiement and alternatively, through Martin’s use of their money for its purchase. The petition further averred that Mrs. Martin had transferred the jewelry to Roppolo (House of Gems) and that petitioners feared that the Martins would conceal or dispose of various assets. While the petition asserts that the jewelry had already been transferred, the verifying affidavit indicated that all the property described in the petition was within the care, custody and control of the Martins.
Therefore, the petition on its face does not warrant the issuance of a writ of sequestration since a prima facie case is not made out therein. Petitioners attempt to sequester as owners of the property, alleging receipt thereof through a dation en paiement. The fact that a dation was executed to petitioners is negated by possession in a third party since delivery of a movable is essential to consummate a valid transfer. Further, the verifying affidavit states that the Martins'possessed all the property described in the petition, which was not true, whereas, the petition states that Roppolo possessed the jewelry. Certainly the affidavit should conform strictly to the petition and therefore petitioners must account for the variance in instances where a remedy as harsh as the issuance of a conservatory writ is obtained ex parte.
Considering the foregoing deficiencies, we are of the opinion that the defendants-in-rule herein must establish the verity of his allegations before the plaintiff-in-rule is required to prove he is entitled to a return of the items sequestered, especially since plaintiff-in-rule was not a party to the original suit and the items were in its possession.
Defendants-in-rule alleged ownership of the jewelry sequestered on the theory that Martin purchased the gems with money he embezzled from Victory Electric Works. We do not find one iota of evidence inscribed in the record to support this contention. The record actually discloses that the jewelry was purchased through the medium of an open account and there was no effort made to prove that the money paid thereon was stolen. Therefore, in conformity with the facts as established by the. record, and the nature of this aspect of the case, we are not required to inquire into the *188 good faith of the House of Gems in accepting the money or to decide the legal effect, if any, of the use of stolen money employed to purchase gems from a third party.
Defendants-in-rule also assert ownership through a dation en paiement, executed by Joseph Martin on October 31, 1960. To reiterate, defendants-in-rule contend that the jewelry in question was conveyed to them by virtue of a provision contained in the dation en paiement, which reads:
“All furniture, furnishings, machinery, equipment, appliances and other contents of the residence located at 613 Andrews Avenue, Metairie, La.” (Emphasis added)
Defendants-in-rule rely upon the phrase “and other contents” to claim that the jewelry was initially given to them.
This dation, insofar as it purports to vest title to the jewelry in the defendants-in-rule, is invalid. One of several vital defects appearing therein is that there was no actual delivery. LSA-Civil Code Article 2656 unequivocally provides that:
“The giving in payment differs from the ordinary contract of sale in this, that the latter is perfect by the mere consent of the parties, even before the delivery, while the giving in payment is made only by delivery.’1 (Emphasis added)
A second defect is omitting to describe the jewelry in this instrument.
Further, there are two factors which prove that Martin had no intention of transferring this jewelry in the authentic act. One is the failure to describe it in the authentic act when other jewelry was specifically described and the second circumstance which confirms that Martin had no intention of giving this jewelry was his comment to Detective Ruiz to the effect that he had hoped his wife could sell it in order to help support herself during his absence.
With respect to the allegation that defendants-in-rule feared that Martin had or would dispose of this jewelry, which was owned by defendants-in-rule, in prejudice of their rights, we are compelled to conclude, predicated on the evidence adduced herein, that defendants-in-rule possessed no right therein that could be prejudiced.
Counsel for defendants-in-rule further maintains that if the first dation by Joseph Martin was insufficient to transfer title, then the subsequent ratification by Mrs. Martin, which occurred in the month of February 1961 and which completely describes the jewelry, cured any defect contained in the first act. We are not impressed by this rationalization for several reasons. First, it was executed long after the writ was issued and the opposition thereto pleaded. Second, there was no intention to transfer this jewelry in the first act, and Mrs. Martin could not execute a valid dation of community property unless the act was ratified or approved by her husband as head and master of the community..[9] That the jewelry, which forms the subject matter of this litigation, belonged to the community cannot be disputed since it was purchased during the marriage and the presumption that it was community property is not destroyed by the fact that four of ■the items were specifically designed for a woman's use.[10]
 Finally, defendants-in-rule assert that even if we affirm that part of the judgment dissolving the sequestration, the award *189 of attorney’s fees to plaintiff-in-rule was improper. Plaintiff-in-rule, on the other hand, asserts that the trial judge erred in failing to award damages in addition to attorney’s fees, and urges us to render a judgment awarding damages of $2,000 and attorney’s fees of $2,000. In cases of this nature, the awarding of damages and/or attorney’s fees is discretionary and we find nothing in the record to indicate that the trial court abused its discretion. However, since plaintiff-in-rule was required to engage in additional litigation by virtue of this appeal, we are of the opinion that the award of attorney’s fees should be increased from $750 to $1000.
Por the reasons assigned, the judgment appealed from is amended so as to increase the award of attorney’s fees to the sum of $1,000, and in all other respects the judgment appealed from is affirmed. Defendants-in-rule are to pay all costs.
Amended and affirmed.

. This jewelry is not the same as that involved in the litigation now before us.

. 'A boat, boathouse, a bank and homestead account, insurance policies and several items of jewelry (not involved in this litigation) and,
“AU furniture, furnishings, machinery, equipment, appliances and other contents of the residence located at 613 Andrews Avenue, Metairie, La.”

. See LSA-C.C.P. Article 3506, Comments (dj § 2, which reads in part:
“This' article also overrules the jurisprudence which holds that attorney’s fees are recoverable as an element of damage only where the writ is dissolved on motion and not where the writ is dissolved after a trial on the merits. * * * ”

. LSA-O.O.P. Article 3506 provides in part:
“Tlie court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, * * *. Attorney’s fees for the services rendered in connection with the dissolution of the writ may be in-eluded as an element of damages whether the writ is dissolved on motion or after trial on the merits.”

. See LSA-Code of Civil Procedure Article 3506, Comment (a) and cases cited therein.

. Swift & Company v. Bonvillian, 139 La. 558, 71 So. 849.

. Williams v. Ralph R. Miller Shows, La. App., 15 So.2d 249.

. This is also the view of the redactors of the Louisiana Code of Civil Procedure, who prescribe the method of dissolving a writ in Article 3506, wherein the burden of proof, ab initio, is placed squarely upon the litigant who has caused the writ to issue. He must first prove by a preponderance of the evidence the verity of the allegations upon which the writ issued before the plaintiff-in-rule is required to offer any proof whatsoever, and his failure to prove his allegations is grounds for dissolution of the writ.

. Liberal Finance Corp. v. Washington, La. App., 62 So.2d 546.

. In Coney v. Coney, 220 La. 473, 56 So. 2d 841, the Supreme Court held that a diamond ring was separate property, only because the husband testified that this bad been a gift to bis wife; however, luggage, that the husband had purchased with his separate funds, but which he did not testify was a gift to his wife, was deemed community property because there was no evidence to overcome the presumption of community.